May it please the Court. Mr. Anderson. My name is Brad Anderson, and I have the opportunity to represent Guy and Fadila Gambrell in this matter. I appreciate the Court setting this matter for oral argument, and I would submit as a decision not only on the summary judgment grant by the trial court, but also on the merits of this case by a review. I think everything is crystal clear from the 1979 judgment that the parties discussed so thoroughly in their briefs. The reasoning behind that, Your Honors, is multiple. First and foremost, we see on page one of that 1979 decision, which I believe is appendix page 200, the parties, the U.S. who has filed suit, as well as the neighbors to the Gambrells, the Heifels, the parties put in front of that court a specific portion of land for that court to make an adjudication upon. If we look in the trial court ruling, and if we look at the briefing and the argument by the U.S. throughout this, there appears to be a complete misunderstanding of that. Instead of acknowledging that a court is bound to make an adjudication based upon what the parties has put in front of it, that's simply ignored. Nobody seems to catch on, and we feel like we certainly have, the Gambrells feel like we certainly have throughout our briefing, but no one seems to understand, and there appears to be much ado about this throughout the briefing and throughout the argument, and appear to be persuasive to the trial court that only a sliver of land was awarded to the neighbors to the Gambrells, the Heifels. Again, the reason for that, your honors, is crystal clear. It's hornbook. It's because, pursuant to the McNamara case, one of our sites in that regard, a court's limited to make an adjudication upon what the parties put in front of it. In other words, the trial court couldn't just expand this into another massive scope, into neighboring property owners, into all of the Heifels land. It only makes sense in that context, your honors, that the court would award that. I would also note, as my second point along this line from the 1979 judgment, there is a crystal clear on page 10, reformation finding. The pages preceding, pages 7 through 10, and apologies, your honor, but I believe it's appendix pages 206 through 210, has a discussion about the history of this parcel. What I mean by of this parcel is back in time, back in the early 1900s, there was a unity of ownership. In 1956, we see a conveyance from the owners of the Heifel land over to the U.S. From 1956, there's then a subdivision that occurs, the owners subdivide it, and at some point the Heifels become an owner of a portion of that land. In the early, I believe, 70s, the U.S. contacts the Heifels, and they make the express request that the Heifels capitulate to where it sees the property line. When the Heifels don't, the U.S. files suit against the Heifels to quiet title, saying, we own your land in kind of a similar manner to the way that they're doing with the Gambrels now. Of course, I would underscore here that the U.S. felt it was necessary to file their quiet title suit, and number two, the Heifels responded with a claim for reformation. We see again, and I won't bore the court with every transaction, but we see again, specifically on page 10, the court does a wonderful job of laying out the elements of reformation, both under Missouri law, which would be the applicable law in this case. It makes a specific finding that there's a mutual mistake. It makes a specific finding about the intent. It goes down the line, and it unequivocally reforms the center of the quarter section to be Peterstone. After doing that, the court then takes the land that was in dispute between the Heifels and the United States, apologies, your honor, and makes an express ruling that the Heifels are awarded that land. So again, by the express terms of the 1979 judgment, it's crystal clear what has gone on in the past. So what's the point you're getting to on that, because the Heifels aren't the parties to this case. So is the point that the government, by filing this lawsuit, is now bound by that determination that the Peterstone is the proper measuring point?  In the end, your honor, and that's a step that I was going to go to, is yes, collateral estoppel should certainly apply. In the trial court, the gambles had their, obviously we put forward a quiet title action, but in the alternative, we also included collateral estoppel and reformation. We believe collateral estoppel should apply, and that's why, first and foremost, that decision is important because it tells, essentially, that the US was aware and that the Heifels were aware of the situation, but nobody else. It's only when we apply collateral estoppel does it come into play in as much as the gambles in the US. In that circumstance, then, your honor, we would have all the elements of collateral estoppel that would apply there, which I believe are the same issue. But it's non-mutual, and you have Mendoza. That is correct, your honor. Mendoza does exist. However, Mendoza has exceptions. It's not a 100% bright line rule. We cite to the MDL case and the Eleventh Circuit case, your honor, that is post-Mendoza. We also cite to U.S. v. Burton. What's the rationale? Instead of giving us cases, what's the rationale for why the government should be estopped? Apologies, your honor. The exception is not estoppel, per se, but there is an exception to the application of a matter of great public import. And here, we certainly fit those elements. It's of great import to Guy and Fadila Gambrill. It's certainly not of great import to the public. It's certainly not a constitutional issue. Well, how does the interplay between collateral estoppel and statute of limitations work? Because the court, in essence, never got to collateral estoppel because it said you were Now, as I understand the law, if we were to affirm the district court that you are barred by the statute, that doesn't adjudicate title. Somebody still has to adjudicate title, right? Yes, your honor. That is 100% correct, and that's another point that I would make. And collateral estoppel may come up in that lawsuit. But the judge dismissed the case for statute of limitations, and you haven't mentioned that yet. Your honor, I- Are you challenging that decision, or- Yes, your honor. Okay. Unequivocally, yes. The judge relies on page 17 of one of the Gambrill's summary judgment motions. It's an argument section, your honor, where the Gambrills, when underscoring that the US was aware of the Reformation action because of the 1979 judgment, that there was, quote unquote, notice to the world. Now, as another general principle with real estate law in the state of Missouri, when a party discusses notice to the world given from a document that's been recorded in a chain of title, they don't literally mean the whole world. There's no fact in this case that the Gambrills said, this is notice to us, or notice to the world, or anything else. That is merely the grabbing of what I, I hate to say this, but I was essentially trying to reinforce or underscore that the US was aware. And instead, what I got in the order was a statement from the trial court that it viewed that as some type of judicial admission, which it certainly could not be a judicial admission under the law. And- Whether it was or not, weren't your clients on notice? No, your honor. I mean, it was a public document. This 1979 litigation was publicly available about the property. So it should be, first of all, your honor- Or weren't your people on notice? So first of all, your honor, it should be notice for the folks in the chain. Second of all, the document itself could not provide notice. At most, if the Gambrills could somehow, or a common person, if that's the standard, could somehow understand the 1979 judgment and actually what it means and what its findings are, they would never read that and say, well, geez, the US may claim a portion of our property. What they would conclude is that the US disputed the high fills ownership based upon its reading of where the center of the quarter section is, and the US was told it was wrong. Was the chain of title, or this argument that you're now making, made to the district court? Yes, your honor. It's, so we're mixing a few things with the notice to the world. Yeah, because the district court latched on to notice to the world, and I didn't see any discussion about chain of title or anything like that. That's why I wonder if the arguments were made. So your honor, we certainly, we put the chain of title into the record by way of the facts all parties did. The court took that notice to the world language out of an argument section and made a ruling on it. We immediately addressed it in the motion to reconsider and laid out explicitly that the trial court was incorrect or in error in that regard, because it simply was ignoring the Reformation language in that underlying judgment. Well, I thought your argument was that because the 1979 decision, which was not appealed, established the Peterstone as the cornerstone that they had no reason to believe there's any dispute anymore. And that therefore they were not on notice because they thought there was no dispute. No, your honor. So in essence, my clients are completely unaware of any claim to the U.S. until when getting a vegetation permit in 2019, the U.S. says, hey, we think we own a corner of your house. That is the first thing I say. You mean actual knowledge. That's actual notice, yes, your honor. But they had, but the judgment and the litigation was a publicly available record and could have been researched by somebody who had property and was. It would be put into the chain of title for the neighboring property, your honor. So when you search the Gambrels' property, you would not come across this 1979 judgment. It's not in their chain of title. So you could research, and I think that's shown by the survey that our expert witness provided and his testimony and the statements of fact that we have in there, he looks through this. He sees everything and makes the adjudication of where the line is. And he bases it upon Peter Stone, as he should. But as I understand it, surveys were specifically accepted from the title insurance. So somebody must have been concerned about it. Judge, that was a survey that we got in preparation after the filing of this case. But I mean, the title insurance that your clients got when they bought the property did not include insurance against a boundary dispute, which it normally does, as I understand it. So I do a little bit of that, your honor, in as much as title insurance goes. And there's the same as survey exception. And absent a survey that goes out and gets done, a title insurance company will exclude that in there. That is not a methodology for notice to the Gambrels. That is not putting them on notice. Furthermore, as I've said, we have a survey that we've introduced as evidence to the court. And the survey shows exactly what the Gambrels survey, if they had gone back and gotten that at the time, it would have shown what the Gambrels survey was. And that is that the Peter Stone is the correct call, the correct monument. And they're the owners of the property in dispute. So I will reserve my remaining time for rebuttal unless the court has further questions. You may reserve. Thank you for your argument. Ms. Moss, we'll hear from you. Good morning, and may it please the court. As this panel has well defined by its questions to opposing counsel, this court should affirm the district court's finding that the statute of limitations under 28 U.S.C. 2409A bars the Gambrels' quiet title action because they do not and cannot dispute their admissions of notice. As discussed by Mr. Anderson, this case is about a boundary dispute between the Gambrels, who bought property near Table Rock Lake, and the United States, which has owned the adjacent property abutting the lake for nearly 70 years. The crux of this case is whether the Gambrels or their predecessors timely filed a quiet title action disputing the boundary line between these properties. But the Gambrels' asserted lack of notice before this panel contradicts the premise of their argument before the district court. Importantly, they acknowledge and rely on a recorded 1979 district court judgment that allegedly resolved this boundary dispute more than 40 years ago. But even more, they expressly admit, quote, the only notice, if any, that the Gambrels could be charged with is the notice of this judgment, end quote. Given these admissions, there is no dispute of any genuine issue that the Gambrels and their predecessors knew or should have known of the government's claim. Let me ask this. Would this be a different case in the absence of the so-called admission? No, Your Honor. I don't think that it would be because essentially this quiet title action that happened in 1979 and then was recorded in 1989 put the world on notice as they admitted, regardless if it was in their chain of- But isn't that, yeah, okay. That's where I was going. Right. Isn't the question whether that's in the chain of title? And if it's not, it doesn't import notice to them. Yes, that is an excellent question. And I'm no property person, but it seems to me this judgment might not be in the chain of title. Well, unfortunately, the Gambrels didn't put into the record the entire chain of title. When you started in 1956 with the deed into the government and then in 1962 with the Platt division from the same grantors who gave the government their property, you could see how it could be plausible that all of the surrounding adjacent property owners would be on notice of something recorded that was related to those different surrounding property lines. But regardless of whether they actually have constructive notice, the issue in this case is what triggers the limitations period. And if you have a reasonable awareness that the government has a claim, it does not matter if it's a legitimate claim. It does not matter if it was in your chain of title. You are required to have done the due diligence to understand whether or not the government has a claim. But again, we're throwing out the so-called admission. Absent that admission, how would they reasonably be put on notice that this 1979 judgment involving different parties other than the United States, but certainly not them, put them on notice? Well, so in this record, there is evidence that the government has markers of all of its different monuments out on the property. So if you look at the case law where it talks about the different notice that can be provided by the government to trigger the statute of limitations, it's not specific to actual deeds in a chain of title. It's based on the types of information that could be reasonably available to someone to determine whether or not the government has a claim. So what would be the circumstances here that you say would have put the Gambles or their predecessors on notice? Yes. Are you asking outside of them being able to find the 1989 judgment? Well, that's one point you've made, but I thought you were about to say there are other things that they could have noticed. So the first would be, this is a publicly recorded document. If you do go and look at the judgment, you can see that the government put into issue in that 1979 case its 1974 survey. That 1974 survey determined that the government believed that its line should be drawn from the mathematical center of the quarter section. At the end of that 1979 case, the court then awards the Highfields property that the government attempted to quit claim to the Highfields, and acknowledging in that property that is awarded to the Highfields is language that describes the property being awarded as being defined by the government's monument, which was at the mathematical center of the quarter section. In addition to that, as plaintiff's own experts point out here, he relied on information from the Corps of Engineers to make a determination as to where did all of these boundaries lie. If the Gambrels had done a survey, they would not have been able to ignore the markers that identify the government's boundary. In addition to that, there is also evidence in this record that shows the parties in the chain of title had to seek vegetation permits from the United States, from the Corps of Engineers, in order to be able to mow property that was owned by the Corps of Engineers, but abutting their land. If you want an unobstructed view of the lake, let's say you are on the lake, but the Corps owns the strips of property between what you own and the lake, then you are then required to get a vegetation permit. As you've seen in the record that we presented before this court and in the facts, there is information showing that the parties knew they had to seek a vegetation permit from the Corps. I don't think that the law would require that the government make active, proactive things, setting up signs or putting up fences in order to tell the entire world, hey, this is property we own. The initial document in this case, the first in line document in this case, the 1956 general warranty deed that was granting this land to the government, defines its boundaries in extensive detail. It's a half page of the deed. If anyone were to try to determine, I'm buying property next to the Corps of Engineers, is there any concern that there might be some issue with the boundary line? If they, at the very minimum, looked at the deeds relating to their property lines and tried to conduct a survey based only on our warranty deed, there is nothing in our warranty deed that would say, probably there's this Peterstone that you need to be concerned about. They would only be able to define the boundary lines by the specific mathematical determinations that are outlined in the warranty deed. What do we make, though, of the fact that the district court in the 1979 case did find that the Peterstone establishes the boundary line? And that wasn't objected to, so why wouldn't a reasonable person say, well, the government acquiesced in the Peterstone being the boundary line? Because they litigated it, lost, and didn't appeal. Yes, Judge Moy, and I think this goes back to the question that you asked about the difference between collateral estoppel and the statute of limitations. Because the triggering mechanism for the statute of limitations is whether or not you had a reasonable awareness. If you go and you look at the 1979 judgment, it creates a problem, even though you see that the court is making evidentiary findings upon which to base his considerations as to how to do this equitable remedy in a quiet title action. That is separate and distinct from a reformation. That quiet title action, in and of itself, should have given someone concern. That when I look at this judgment and I see that the United States has said, my 1974 survey is telling me that the boundary should be calculated from the mathematical center. And then I see that even though the court is discussing, there is this issue with whether or not the parties agreed where that line should be drawn way back 70 or 80 years ago. When I see that the court, issuing its equitable remedy, decides to issue a grant of land to that party that then acknowledges and honors the government's monument at the mathematical center, then it's not reasonable for someone to then assume that the factual findings in an equitable remedy case are then binding on the government into perpetuity. And again, that's why I say there's a difference between what the statute of limitations trigger requires and what collateral estoppel would speak to if we're looking at whether or not that is something that can be re-litigated again. So where we would be at the end of this case, assuming we agree with you on what the district court did, is there'd be no adjudication as to collateral estoppel and the land would still be in dispute, right? And there's no determination of who owns it. And if the gamblers decide to make use of it, build a building on it, or whatever, then somebody's going to have to file a lawsuit to adjudicate that claim, right? That is correct. Exactly as the district court relied on in the Block case. That would be where we are today. But that doesn't mean that the parties, whether the government or the gamblers, could not do something further to further define the actual boundary. Why are we having to have this dispute? I mean, it just seems the amount of money to spend on the litigation has got to be multiples of what the land's worth. I completely agree with you, Your Honor. And I don't know that that's something that's a part of the record or that it's something that I'm allowed to talk about. But similar to the government in the Highfield case, trying to come to a resolution about this is a reason why we are where we are today. We'll leave it at that, I guess. I want to bring this court's attention back to the standard. On the statute of limitations issue, is there any helpful authority on whether documents like this 1979 judgment or 89 judgment, 79 litigation involving another parcel are properly considered to be within the realm of what an adjacent property owner has noticed? I was not able to find specific on-point case law that would specifically instruct this panel in this court. So we just have the general proposition of constructive notice and we have to apply it to these facts? Well, when you look at Block and Cain and Lombard and Long, even the case cited by the Gambrills with respect to whether or not they can have constructive notice, you see all the different factual things that were important to those courts, including this court, as to whether or not there was notice. It's a fact-intensive question on a case-by-case basis and it could change depending on who is bringing the case. But that's why this is unique. Because of this specific matter before the court, these parties made an explicit admission that they had notice. And as a matter of law, the district court found then that there was no genuine dispute. I think it becomes problematic and maybe contradictory for the Gambrills to now insist that they relied on this judgment, that the whole world was aware of this judgment, that they have privity with the property owners affected by that judgment, that they should benefit from the equitable remedies granted to their neighbors through that judgment, while simultaneously arguing they did not have notice. What's the privity point? How are they in privity with the neighbors? The Gambrills are arguing that they are in privity with the litigants in the 1979 case because their properties at issue in this case border and are adjacent to the properties at issue in the 1979 case. And to that point, if they are admitting that they have privity with those property owners, then they are admitting that this document is something they should have found, which they very easily did since they inserted it into this litigation from the inception of this case and then relied on it to suggest that it informed them of something about whether a boundary dispute existed. But their assumption and their interpretation of a judgment from 40 years ago cannot be said to be binding on the United States. Do you rely on Mendoza on the... I assume you did, and your position is, well, the government may not have wanted to appeal over the HIFO land. They were willing to tolerate that, but if it extended further, maybe we want to litigate it. He says there are exceptions in some other circuits for non-constitutional matters or... What do you think about the exceptions? Mendoza is a Supreme Court case. Well, I know, but it involved a particular scenario, and I guess maybe some circuits have said it doesn't cover all scenarios. Correct. And that's an excellent question, because here, why would the government appeal a case like this when the entire property that they put in dispute is exactly the grant that was made to the HIFILS? And on top of that, it was based on their monument. The language, the call language in that deed that was granted to the HIFILS was based on the monument that the government had marked, showing the boundary was drawn from the mathematical center. I see that I'm out of time, so I will... Unless you have other questions, I will finish my remarks. Very well. Thank you for your argument.  Thank you, Your Honor. May it please the Court. Your Honor, the US stood before you and discussed the 1974 survey and the monuments that show up based on that 1974 survey, and they said to you, that is why the 1979 judgment gives you... Or gives the gambler's notice. The US continues to ignore that the 1979 judgment makes a specific reformation finding that negates all of those things. Where I'm going with this, Your Honor, is that I would invite the Court to actually not remand the case, but to enter judgment in favor of the gambler's, based upon the explicit terms of the 1979 judgment and the reformation that is there. That makes perfect sense. The monuments, the notice, all of these things that the government has talked about is irrelevant. It's overruled by the 1979 judgment. Second, in the event that the Court were persuaded or concerned with the notice to the world aspect, the US also said that it is a mixed item of law and fact. We would certainly submit, the gamblers would certainly submit, that there is not a clear record. There's certainly no record that suggests that the 1979 judgment is in the gambler's chain of title. I can tell you the gamblers were informed of it only after the government came to them in 2019 and said, we own a part of your land. But that's not a part of the record. Obviously, it wouldn't be part of our record. It would make no sense, Your Honor. That certainly would be the basis for a remand. Then the final thought that I have is something that the Court has mentioned in a couple of different questions to both counsel and I for the US. That is, what is the actual practical effect? There's been discussion, well, geez, maybe it gets fixed by a lawsuit down the road by the US in the event that the statute of limitations is applicable. What's even funnier, not funny at all actually, is that the reformation action with the Highfill tract, the Highfills and the owners of that land now have Peterstone as center of the quarter section. The US chose not to appeal that. How and why, we don't know and I don't care. The reality is that that reformation language is there. That will be determined 100% for them. So in theory, if the gamblers were not allowed to go forward with their, found that this is their property land also, we could have a situation where the US has a boundary with one neighbor that runs and then starts somehow magically 80 feet over for another. That would cause nothing but chaos with the recorder of deeds. It would cause nothing but chaos with property history, sales in the future, all kinds of things. So we appreciate your time, Your Honor. And we did. Thank you for your argument. Thank you to both counsel. The case is submitted. The court will file a decision in due course. Counsel are excused.